1   ROBBINS GELLER RUDMAN
     & DOWD LLP
2   SHAWN A. WILLIAMS (213113)
  Post Montgomery Center
3   One Montgomery Street, Suite 1800
  San Francisco, CA  94104
4   Telephone:  415/288-4545
  415/288-4534 (fax)
5   shawnw@rgrdlaw.com
     – and –
6   MARK SOLOMON (151949)
  DANIELLE S. MYERS (259916)
7   MICHAEL ALBERT (301120)
  655 West Broadway, Suite 1900
8   San Diego, CA  92101-8498
  Telephone:  619/231-1058
9   619/231-7423 (fax)
  marks@rgrdlaw.com
10   dmyers@rgrdlaw.com
  malbert@rgrdlaw.com
11

12   Counsel for the Norfolk County Council as
  Administrating Authority of the Norfolk Pension Fund

13             UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN A. MULLEN, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:20-cv-07674-WHA |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | NORFOLK COUNTY COUNCIL AS ADMINISTERING AUTHORITY OF THE NORFOLK PENSION FUND'S |
| WELLS FARGO & COMPANY, et al., | MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS |
| Defendants. | |

DATE:      February 4, 2021
TIME:      8:00 a.m.
CTRM:    12, 19th Floor
JUDGE:   Hon. William Alsup

4828-8876-1814.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ....................................................2

III.  ARGUMENT .......................................................................................................2

    A.   NPF Has the Largest Financial Interest Under the Methodology that This Court Has Used to Select Lead Plaintiffs for the Last Two Decades ......................3

    B.   Even if HERS' Account-By-Account Accounting Is Accepted, NPF Has the Largest Financial Interest Because HERS' Account-By-Account Financial Interest Cannot Include Losses Incurred by "Net Seller" and "Net Gainer" Accounts ..............................................................................9

    C.   NPF Also Satisfies the Rule 23 Requirements ....................................11

    D.   The Presumption in Favor of Appointing NPF as Lead Plaintiff Will Not Be Rebutted........................................................................................12

    E.   The Competing Motions Should Be Denied Because None of the Other Movants Have the Largest Financial Interest .......................................12

IV.   CONCLUSION....................................................................................................13

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**CASES**

5

*Born v. Quad/Graphics, Inc.*,
6    2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ........................................................................10

7

*Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) .....................................................................................11

8

*Dura Pharm. v. Broudo*,
9    544 U.S. 336 (2005) .............................................................................................................3

10

*Evellard v. LendingClub Corp.*,
11    2016 WL 9108914 (N.D. Cal. Aug. 15, 2016) ...............................................................6, 7

12

*Evellard v. LendingClub Corp.*,
    No. 3:16-cv-02627-WHA (N.D. Cal.) ............................................................................6, 8

13

*Felix v. Symantec Corp.*,
14    No. 3:18-cv-02902-WHA (N.D. Cal.) (NPF) ......................................................................7

15

*Horowitz v. Sunedison, Inc.*,
16    2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) .....................................................................3

17

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
    No. 8:15-cv-00865-AG-JCG (C.D. Cal.) ...........................................................................12

18

*In re Allergan PLC Sec. Litig.*,
19    2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) .....................................................................9

20

*In re Bausch & Lomb Inc. Sec. Litig.*,
21    244 F.R.D. 169 (W.D.N.Y. 2007) ...............................................................................10, 11

22

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ..................................................................................... *passim*

23

*In re Critical Path, Inc. Sec. Litig.*,
24    156 F. Supp. 2d 1102 (N.D. Cal. 2001) .............................................................................11

25

*In re Diamond Foods, Inc., Sec. Litig.*,
    281 F.R.D. 405 (N.D. Cal. 2012) ...................................................................................3, 8

26

*In re Enron Corp. Sec. Litig.*,
27    206 F.R.D. 427 (S.D. Tex. 2002) .......................................................................................11

28

1

2                                                                                                          **Page**

3

4   *In re Express Scripts Holding Co. Sec. Litig.*,
        No. 1:16-cv-03338-KMW (S.D.N.Y.) ...................................................................6

5   *In re Intuitive Surgical, Inc. Sec. Litig.*,
        No. 5:13-cv-01920-EJD (N.D. Cal.) ..................................................................6, 8
6

7   *In re Network Assocs., Inc., Sec. Litig.*,
        76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...............................................................12
8

9   *In re Petrobras Sec. Litig.*,
        No. 1:14-cv-09662-JSR (S.D.N.Y.) ...............................................................6, 7, 8

10  *In re Sipex Corp. Sec. Litig.*,
        No. 3:05-cv-00392-WHA (N.D. Cal., May 24, 2005) ...................................1, 4, 10
11

12  *In re Surebeam Corp. Sec. Litig.*,
        2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) .....................................................2, 11
13

    *In re: Tyson Foods, Inc. Sec. Litig.*,
14      No. 5:16-cv-05340-TLB (W.D. Ark.) ...................................................................6

15  *In Re Wrap Techs., Inc. Sec. Exch. Act Litig.*,
        2021 WL 71433 (C.D. Cal. Jan. 7, 2021) ...........................................................3
16

17  *Markman v. Whole Foods Market, Inc.*,
        No. 1:15-cv-00681-LY (W.D. Tex.) .....................................................................6
18

19  *New Hampshire v. Maine*,
        532 U.S. 742 (2001) ............................................................................................9

20  *Nicolow v. Hewlett Packard Co.*,
        2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ........................................................3
21

22  *Owens v. FirstEnergy Corp.*,
        2020 WL 6873421 (S.D. Ohio Nov. 23, 2020) ...............................................3, 4, 6
23

    *Perlmutter v. Intuitive Surgical, Inc.*,
24      2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ......................................................11

25  *Robinson v. Synchronoss Techs., Inc.*,
        No. 3:17-cv-02978-FLW-LHG (D.N.J.) ...............................................................6
26

27  *Salhuana v. Diamond Foods, Inc.*,
        No. 3:11-cv-05386-WHA (N.D. Cal.) ..................................................................7

28

Page

*St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
  2019 WL 494129 (M.D. Tenn. Jan. 9, 2019) ...........................................................................3

*The Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
  No. 3:19-cv-04744-WHA (N.D. Cal.) ......................................................................................7

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
  No. 0:13-cv-01686-JRT-FLN (D. Minn.) ..................................................................................6

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
  2019 WL 1171695 (D. Kan. Mar. 13, 2019) ............................................................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(3)(B) ........................................................................................................................2
  §78u-4(a)(3)(B)(iii)(I) ..............................................................................................................2
  §78u-4(a)(3)(B)(iii)(I)(cc) ......................................................................................................12
  §78u-4(a)(3)(B)(iii)(II) ...........................................................................................................13
  §78u-4(e)(1) ..............................................................................................................................5

Federal Rules of Civil Procedure
  Rule 23 .............................................................................................................................. *passim*
  Rule 23(a) .................................................................................................................................2

**SECONDARY AUTHORITIES**

Haw. Rev. Stat. Ann.
  §88-22 .......................................................................................................................................8

1

## I.      INTRODUCTION

2       Four motions were filed by investors seeking appointment as lead plaintiff pursuant to the

3  Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* ECF Nos. 28, 36, 38, 47.

4  Pursuant to the PSLRA's sequential process, the lead plaintiff is the movant which "has the greatest

5  financial stake in the outcome of the case, so long as [it] meets the requirements of Rule 23."[1]

6       With nearly $6.2 million in losses under the "last-in, first-out" ("LIFO") methodology

7  favored by this Court as the determinative metric for lead plaintiff selection, Norfolk County Council

8  as Administering Authority of the Norfolk Pension Fund ("NPF") is the movant with the greatest

9  financial stake in the outcome of the case.  Hawaii Employees' Retirement System ("HERS") claims

10  a larger LIFO loss than that of NPF, but HERS' losses were calculated by performing five separate

11  loss analyses for each of its accounts, as if each account was an autonomous investor.  This

12  technique serves to inflate HERS' actual LIFO losses by nearly $3 million because it fails to reflect

13  in HERS' loss calculation the overall gains it incurred by selling Wells Fargo & Company shares at

14  inflated prices during the Class Period.  *See* §III.A., *infra*.  Given the distortive impact of the "self-

15  disaggregation" technique on the economic reality of a single-entity investor's overall investment, it

16  is not surprising that no public pension fund movant has ever employed this method in lead plaintiff

17  motions before this Court.  Likewise, HERS ***itself*** has never held itself out before as a disaggregated

18  entity, nor has it utilized this "self-disaggregation" technique previously in any of the eight cases in

19  which it sought to serve as a lead plaintiff over the last decade.  If the Court conducts the traditional

20  apples-to-apples LIFO analysis as articulated in *In re Sipex Corp. Sec. Litig.*, No. 3:05-cv-00392-

21  WHA, ECF No. 30 (N.D. Cal., May 24, 2005), HERS' actual LIFO loss is $5.77 million, not the

22  $8.23 million claimed.

23       But even if the Court were to entertain HERS' separate-account-by-separate-account

24  accounting, NPF would still emerge the presumptive "most adequate plaintiff," as three of five

25  HERS' accounts cannot meet the Fed. R. Civ. P. 23 requirements if considered on a stand-alone

26  basis as these accounts are net-gainers and net-sellers, or do not have any Class Period purchases or

27  ---

[1]     *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  Unless otherwise noted, all emphasis is added and all citations are omitted throughout.

28

losses.  *See, e.g.*, *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) ("each individual or entity, once segmented, must independently establish adequacy and typicality"). And once the three atypical accounts are excluded from HERS' motion, NPF has the largest loss even under HERS' newly-minted disaggregation method.

HERS cannot have it both ways: either it is one entity (as it has always held itself out to courts in all previous PSLRA litigation, as well as to the public), in which case it must set forth its *actual* LIFO losses (rather than artificially segregating LIFO losses by account and ignoring some accounts) *or* it is an aggregation of distinct fund entities, in which case *each* of the sub-entities must independently meet the typicality and adequacy requirements of Rule 23 for HERS to be appointed, which three of its accounts cannot do.  Regardless of which way HERS' financial interest is ultimately assessed, NPF's interest is greater.

NPF suffered approximately $6.2 million in *actual LIFO* losses and is typical and adequate. NPF is an institutional investor that has previously appeared before this Court and is neither a net-gainer nor a net-seller.[2]  It is the paradigmatic lead plaintiff candidate entitled to the PSLRA's "most adequate plaintiff" presumption.  15 U.S.C. §78u-4(a)(3)(B).  The remaining movants - Ms. Roley and the Coyne Group - also have significantly smaller financial interests than that of NPF and their motions should be denied because they cannot show that NPF should not be appointed.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the Court should deny the competing motions and grant NPF's motion for appointment as lead plaintiff.

## III.   ARGUMENT

To identify the party entitled to appointment as lead plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *Cavanaugh*, 306 F.3d at 730; 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  "It must then

---

[2]   From prior experience, both counsel for NPF and NPF itself are aware that the Court often issues a questionnaire to be completed by all lead plaintiff applicants who wish to proceed and that the Court is likely to instruct that the successful applicant thereafter conduct a satisfactory RFP process to select lead counsel.  To best accommodate that process, NPF has not moved for the appointment of lead counsel.  Having noticed that the Court may be tailoring its questionnaire to specific cases, NPF will promptly respond if and when the Court issues a questionnaire in this case.

focus its attention on ***that*** plaintiff and determine, based on the information [it] has provided in [its] pleadings and declarations, whether [it] satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730 (emphasis in original).  Stated differently, "[o]nce [the court] determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that [it] does not satisfy the typicality or adequacy requirements." *Id*. at 732; *see also In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 407-08 (N.D. Cal. 2012) (Alsup, J.).

### A.  NPF Has the Largest Financial Interest Under the Methodology that This Court Has Used to Select Lead Plaintiffs for the Last Two Decades

While the PSLRA does not specifically delineate how financial interest should be assessed, the Ninth Circuit has said "[t]o make this comparison, the district court . . . may select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4.  Most district courts, including this Court, equate financial interest with financial loss.  *See id*. at 732 ("So long as the plaintiff with the ***largest losses*** satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status . . . ."); *Diamond Foods*, 281 F.R.D. at 408 ("'approximate loss,' is generally considered the most important factor" in determining financial interest).[3]  While "[t]he Ninth Circuit has declined to endorse a particular method" to determine which party has the greatest financial stake, "[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out ('LIFO') methodology." *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013).

---

[3]  Federal courts around the country, including in this Circuit as recently as last week, have held that a movant's larger loss outweighs any predominance a candidate may claim in all three other *Olsten-Lax* factors.  *See In Re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (finding movant with larger LIFO loss has a greater financial interest than competing movant who prevailed on the first three so-called "*Olsten-Lax* factors" and claimed a larger loss based on the holding of *Dura Pharm. v. Broudo*, 544 U.S. 336 (2005)); *Owens v. FirstEnergy Corp*., 2020 WL 6873421, at *6 (S.D. Ohio Nov. 23, 2020) (same); *Horowitz v. Sunedison, Inc*., 2016 WL 1161600, at *4 n.5 (E.D. Mo. Mar. 24, 2016) ("Although the Zecher Family Group argues that it has the largest financial interest when measured under the other *Lax* factors, it does not dispute that MERS has the greatest approximate loss, which is the primary *Lax* factor in determining which potential lead plaintiff has the largest financial interest in the outcome of this case."); *St. Clair Cty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc*., 2019 WL 494129, at *3 (M.D. Tenn. Jan. 9, 2019) (appointing movant with $80,000 greater loss despite competing movant's larger shares purchased (both total and net) and greater net expenditures).

As this Court is aware, the LIFO methodology is premised on the assumption that the first shares sold are those acquired most recently before that sale, whereas first-in, first-out ("FIFO") assumes that the first shares sold are the first shares acquired by that investor.  This Court has stated that LIFO is the preferred metric at the lead plaintiff stage, particularly for investors with pre-class period holdings "who both buy and sell within the class period" because "LIFO is closer to the economic realities of market investing and the purposes of the securities acts."  *Sipex*, No. 3:05-cv-00392-WHA, ECF No. 30 at 7.  In illustrating LIFO's advantages in accounting for an investor's Class Period gains due to inflation in the stock price, this Court explained:

> [W]hen an investor already owns shares at the outset of the class period and sells them  during the class period, the investor actually profits from the fraud by recovering a fraud premium over and above the true value of the shares.  ***When the same investor already holds shares at the outset of the class period but, in addition, buys and sells shares during the class period***, the gains received must be used to reduce the losses incurred.  Otherwise, the investor would reap a windfall*.

*Id*. at 6; *see also Owens*, 2020 WL 6873421, at *10 ("'[U]nder the LIFO approach, a plaintiff's sales of the defendant's stock during the class period are matched against the last shares purchased, *resulting in an offset of class-period gains from a plaintiff's ultimate losses*. . . .'  Finding that the LIFO method more accurately depicts the financial interest of lead plaintiff candidates in securities class actions, this Court opts to use the LIFO method.").

In its lead plaintiff application, HERS claims to have suffered $8.2 million in ***LIFO*** losses, a financial interest that, at first blush, exceeds NPF's $6.18 million LIFO loss:

| Movant | Actual LIFO | Disaggregated LIFO |
|---|---|---|
| NPF | $6,189,945 | $6,189,945[4] |
| HERS | $5,767,328[5] | $8,227,352 |

---

[4]  NPF, like the overwhelming majority of governmental pension funds and other single-entity institutional investors has numerous brokerage "accounts" for various record-keeping and logistical purposes, such as allowing for the implementation and tracking of different investment strategies or anytime multiple outside investment are retained, to keep their respective proprietary trading models isolated from competitors.  The economic reality of NPF's investment position is generally not affected by the specific "account" making purchases or sales.

[5]  *See* Declaration of Danielle S. Myers in Support of Norfolk County Council as Administering Authority of the Norfolk Pension Fund's Memorandum of Law in Opposition to Competing Lead Plaintiff Motions ("Myers Opp. Decl."), Ex. 1, submitted concurrently herewith.

1    However, HERS' LIFO loss is inflated by its use of an account-by-account accounting

2    methodology that ***does not*** apply LIFO across HERS' purchases and sales, but rather it does so on an

3    account-by-account basis.  By disaggregating five of its trading accounts and treating them as if each

4    account is a separate investor, the economic reality of HERS' total exposure to Wells Fargo

5    securities during the Class Period is distorted as HERS' significant Class Period gains are simply

6    ignored.  Adopting HERS' logic, any of its accounts could reap any amount of gains by selling any

7    amount of shares at fraud inflated prices during the Class Period without affecting HERS' losses in

8    other accounts or its ability to aggregate accounts with losses for lead plaintiff appointment

9    purposes.

10   HERS' account-by-account aggregation, if permitted, would effect an end-run around the

11   fundamental rational behind this Court's adoption of the LIFO methodology.  Indeed, in Account 4,

12   HERS sold 182,790 Wells Fargo shares at an average price of $51 per share during the Class Period,

13   ***resulting in proceeds of over $9.3 million***.  *See* ECF No. 47-3 at 5.  Under the ***actual*** LIFO

14   methodology, these $9.3 million in sales would be matched against HERS' immediately preceding

15   purchases of Wells Fargo shares and any remaining shares held at the end of the Class Period would

16   be assigned the 90-day lookback price as set forth in 15 U.S.C. §78u-4(e)(1).  And given that HERS

17   purchased its Wells Fargo stock at an average price per share of just over $34 across all five

18   accounts, accounting for the 182,790 shares sold in Account 4 at an average of $51 per share would

19   not allow HERS to simply ignore millions of dollars in gains it recognized during the Class Period

20   against the losses it suffered under the ***actual*** LIFO methodology.  Here, however, by disaggregating

21   its purchases and sales on an account-by-account basis, all of the millions of dollars of gains HERS

22   recognized through its sales in Account 4 are ignored in HERS' LIFO loss calculation, allowing it to

23   sidestep accounting for the fraud premium recovered on Account 4's pre-Class Period purchases

24   while still claiming nominal compliance with LIFO.  This artificiality is exactly why courts utilize

25   the LIFO accounting method as "LIFO helps to reveal whether plaintiffs actually profited from class

26   period transactions due to inflated stock prices." *See Owens*, 2020 WL 6873421, at *6.  Conversely,

27   using either the FIFO or this self-disaggregation methodology created by HERS, "a lead plaintiff

28

1   candidate can 'zero[ ] out' class period sales by matching them to pre-class period purchases, which

2   can 'grossly inflate[ ]' damages to institutional investors." *Id.*

3       This is not to say that there are never circumstances under which various different legal

4   entities can legitimately seek to serve as lead plaintiff and aggregate their separate losses.  However,

5   arbitrarily *dis*aggregating a single entity's losses is antithetical not just to the rationale behind courts'

6   adoption of LIFO but also to the Ninth Circuit's requirement that loss methodologies be both

7   "rational and consistently applied" during the lead plaintiff appointment process.  *Cavanaugh*, 306

8   F.3d at 730 n.4.[6]  Nor is HERS' use of the disaggregation method consistent with its positions in

9   prior and ongoing securities fraud cases.  In fact, an analysis of HERS' history of seeking lead

10  plaintiff status shows that in the eight times it has moved for appointment as lead plaintiff, it has

11  ***never before*** disaggregated itself at the lead plaintiff stage, always opting to calculate on an actual,

12  netted-across-accounts basis.[7]  HERS' track record of rationally and consistently moving as a single

13  entity includes its motion in *LendingClub*, No. 3:16-cv-02627-WHA, where HERS moved this Court

14  for appointment as lead plaintiff, holding itself out as a single investor and setting forth its financial

15  interest based on its ***actual*** LIFO and FIFO losses, never mentioning the existence of stand-alone

16  "accounts," much less suggesting that each account's losses must be compiled separately.[8]  Not only

17

---

18  [6]    This Court is one of many that are critical of the myriad techniques that appear to be employed for no purpose other than to create a larger loss at the lead plaintiff stage.  *See Evellard v.*

19  *LendingClub Corp.*, 2016 WL 9108914, at *3 (N.D. Cal. Aug. 15, 2016) ("This order further recognizes that an important consideration in selecting the lead plaintiff is to estimate the class

20  period.  Lead plaintiff candidates will typically stretch or shrink the class period in order to jockey for position so as to wind up with the largest loss.").

21  [7]    *See* Myers Opp. Decl., Exs. 2-9 (HERS' PSLRA certifications and loss charts in *Robinson v.*

22  *Synchronoss Techs., Inc.*, No. 3:17-cv-02978-FLW-LHG (D.N.J.); *In re: Tyson Foods, Inc. Sec. Litig.*, No. 5:16-cv-05340-TLB (W.D. Ark.); *Evellard v. LendingClub Corp.*, No. 3:16-cv-02627-

23  WHA (N.D. Cal.); *In re Express Scripts Holding Co. Sec. Litig.*, No. 1:16-cv-03338-KMW (S.D.N.Y.); *Markman v. Whole Foods Market, Inc.*, No. 1:15-cv-00681-LY (W.D. Tex.); *In re*

24  *Petrobras Sec. Litig.*, No. 1:14-cv-09662-JSR (S.D.N.Y.); *In re Intuitive Surgical, Inc. Sec. Litig.*, No. 5:13-cv-01920-EJD (N.D. Cal.); and *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic,*

25  *Inc.*, No. 0:13-cv-01686-JRT-FLN (D. Minn.)).

26  [8]    A review of lead plaintiff motions filed in this Court in the last two decades reveals ***not a single governmental entity*** that has ever disaggregated itself into separate accounts to set forth its financial

27  interest.  *See The Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.) (The Police Retirement System of St. Louis, Anchorage Police and Fire Retirement

28  System)*; Felix v. Symantec Corp.*, No. 3:18-cv-02902-WHA (N.D. Cal.) (NPF)*; LendingClub*, No. 3:16-cv-02627-WHA (Boston Retirement System, Water and Power Employees' Retirement, NORFOLK COUNTY COUNCIL AS ADMINISTERING AUTHORITY OF THE NORFOLK PENSION

that, but in its capacity as a class representative in *Petrobras*, HERS and its present counsel *prohibited* single-entity class members such as HERS from using the "self-disaggregation" method in their settlement claims:

> Separate Proofs of Claim should be submitted for each separate legal entity (e.g., a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name). **Conversely, a single Proof of Claim should be submitted on behalf of one legal entity including all transactions made by that entity on one Proof of Claim, no matter how many separate accounts that entity has (e.g., a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Proof of Claim).**

Myers Opp. Decl., Ex. 10 at 4.

HERS' organization and structure supports HERS' historically consistent practice of setting forth its actual losses at the lead plaintiff stage, suggesting that such practice is more reflective of the economic realities of HERS' investments than account-by-account disaggregation. HERS' Comprehensive Annual Financial Report for the Fiscal Year Ended June 30, 2019 makes clear that it is a "single plan" for accounting purposes precisely because the entire corpus of the retirement system can be used for a single purpose.[9] Likewise, the Hawaii state statute governing HERS codifies its status as a single unitary investor that must hold *all of its securities* in one name:

> There shall be a retirement system for the purpose of providing retirement allowances and other benefits for employees. It shall have the powers and privileges of a corporation and shall be known as the "Employees' Retirement System of the State of Hawaii" and by that name may sue or be sued, transact all of its business, invest all of its funds, and hold all of its cash and securities and other property.

Haw. Rev. Stat. Ann. §88-22 (West). Given the governing law, the nature of this single united plan, and HERS' repeated past aggregation of its trading in lead plaintiff motions, disaggregation by account is not warranted.

---

Disability and Death Plan of the City of Los Angeles, Northern Ireland Local Government Officers' Superannuation Committee, HERS); *Salhuana v. Diamond Foods, Inc.*, No. 3:11-cv-05386-WHA (N.D. Cal.) (Oklahoma Law Enforcement Retirement System, Mississippi Public Employees' Retirement System).

[9]   *See* Myers Opp. Decl., Ex. 11 at 4 ("The ERS Pension Trust is . . . considered to be a single plan for accounting purposes because all assets of the ERS may legally be used to pay the benefits of any of the ERS members or beneficiaries, as defined by the terms of the ERS.").

NPF further observes that, by committing itself to account-by-account disaggregation at the outset of this litigation, HERS may be doing *itself* a significant disservice if there is a positive outcome to the case.  That is because despite the ubiquitous acceptance of LIFO to determine losses at the lead plaintiff stage, courts overwhelmingly adopt plans of allocation using the ***FIFO*** methodology, finding that different accounting methodologies are appropriate in different circumstances and that the FIFO methodology is preferred for matching transactions at the allocation stage.  *See Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 2019 WL 1171695, at *5 (D. Kan. Mar. 13, 2019) ("In making the lead plaintiff determination, however, this Court does not choose between FIFO and LIFO for all purposes, and the parties will be able to litigate the proper computation of damages at the appropriate stage."); *see also* Myers Opp. Decl., Ex. 12 (Plan of Allocation adopted by this Court in *Diamond Foods* matching transactions using the FIFO methodology); Myers Opp. Decl., Ex. 13 (Plan of Allocation adopted in the *Petrobras* securities litigation in which HERS served as a class representative employing the FIFO methodology); *Intuitive Surgical*, No. 5:13-cv-01920-EJD (same) (Myers Opp. Decl., Ex. 14).  And, as shown in the below table, HERS' ***actual*** FIFO losses far exceed both its LIFO and its FIFO losses under the account-by-account method:

|  | Actual LIFO | Disaggregated LIFO | Actual FIFO | Disaggregated FIFO |
|---|---|---|---|---|
| HERS | $5,767,328 | $8,227,352 | ***$13,861,794*** | $8,283,941 |

Whereas employing LIFO to compare lead plaintiff movants' financial interests is widely accepted as compatible – and is not logically inconsistent – with employing FIFO at the resolution stage, there is little room for debate that HERS' self-disaggregation will shackle it to those reflected losses if it is appointed lead plaintiff.  Implicit in HERS' use of the self-disaggregation method is that the inherent nature of its organization and structure requires its losses to be considered account-by-account.  And if that is the case, then so be it.  What would be problematic is if HERS' position is that it can disaggregate itself solely for purposes of demonstrating that it has the largest financial interest at the lead plaintiff stage only to reconstitute itself for the purpose of crafting a plan of

allocation under Actual FIFO and submitting one aggregate settlement claim.  If that is HERS'
position, it should be disclosed now.[10]

**B.    Even if HERS' Account-By-Account Accounting Is Accepted, NPF
Has the Largest Financial Interest Because HERS'
Account-By-Account Financial Interest Cannot Include Losses
Incurred by "Net Seller" and "Net Gainer" Accounts**

If the Court were to grant HERS' request that each of its accounts be evaluated for lead
plaintiff status on an account-by-account basis, NPF's $6.2 million in losses would still give it the
largest financial interest because HERS' Account 2, which comprises more than 60% of HERS'
claimed disaggregated LIFO loss, as well as Account 4 and Account 5, are unable to meet the Rule
23 requirements.

Accounts 2 and 4 cannot be considered for lead plaintiff status under HERS' disaggregated
method because each is a "net seller" and "net gainer" by virtue of having sold more shares during
the Class Period than it purchased, and having gained *more* from selling its Wells Fargo shares than
it spent purchasing Wells Fargo shares during the Class Period.  In other words, Accounts 2 and 4
are atypical and subject to unique defenses stemming from the fact that, as "net sellers" and "net
gainers," each account sold more *pre*-Class Period shares (which were not purchased at artificially
inflated prices) *during* the Class Period (at artificially inflated prices) than the fraud-inflated Class
Period shares it purchased, thereby profiting from the fraud:

| HERS Account | Net Shares Purchased (Net Sold) | Net Funds Expended (Net Gained) | Eligible LP? | Approximate LIFO Loss of Eligible LP (LIFO Gain) |
|---|---|---|---|---|
| 1 | 142,726 | $7,274,848 | Yes | $3,383,575 |
| 2 | (388,700) | ($4,588,003) | No | $4,955,953 |
| 3 | 661,263 | $17,987,358 | Yes | $185,469 |

---

[10]    *See New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (recognizing the obvious, that "'where a
party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he
may not thereafter, simply because his interests have changed, assume a contrary position, especially
if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"); *In
re Allergan PLC Sec. Litig.*, 2020 WL 5796763, at *7 (S.D.N.Y. Sept. 29, 2020) ("My views on this
subject were essential to my ruling on the lead plaintiff motion.  BRS did not seek reargument on
that question (not that reargument would have been granted); instead, it and its lawyers devised a
secret workaround to my ruling.  They thereby placed the interests of counsel ahead of those of the
class.").

| 4 | (182,790) | ($9,336,973) | No | $0 |
|---|---|---|---|---|
| 5 | 0 | $297,644 | No[11] | ($297,644) |
| **Total Losses of Eligible HERS Accounts** | | | | **$3,569,043.14** |

Courts overwhelmingly hold that net sellers ***and*** net gainers – such as Account 2 and Account 4 – are precluded from being appointed as lead plaintiff. *See Born v. Quad/Graphics, Inc.*, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) ("Anklis is a 'net seller' and 'net gainer' during the *Born* class period, meaning that he sold more shares than he purchased and earned more in proceeds than he spent – a fact Anklis does not contest. . . . That status effectively disqualifies Anklis . . . .); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) ("[C]ourts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices."); *see also Sipex*, No. 3:05-cv-00392-WHA, ECF No. 30 at 8 (This Court ***sua sponte*** noticing that movant was net seller; ordering defendants to provide the Court with supplemental briefing on the issue; finding that because movant "was a net ***seller*** throughout the class period, there is a plausible chance that [movant] will have no net recovery") (emphasis in original).[12]

A helpful explanation as to the rationale behind rejecting net sellers and net gainers comes from Judge Koh in *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011). In *Perlmutter*, a lead plaintiff movant was challenged on the basis that he was a net seller and net gainer during the class period. The movant in *Perlmutter* argued that although he sold more shares during the class period and reaped more in proceeds from his sales than he expended from purchases, he still suffered an overall loss on his class period purchases in the defendant company's stock (just as HERS' Account 2 did). *Id.* Judge Koh rejected his argument, explaining that "[t]he purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud." *Id.* (citing Magistrate Judge Payson's opinion from *Bausch & Lomb*). Judge Koh further noted:

---

[11]   Account 5 is also ineligible to serve as a lead plaintiff because it sold all of its shares before the end of the Class Period and realized a profit of nearly $300,000 on its Class Period Wells Fargo investment.

[12]   It appears that the movant in *Sipex* was a net seller but ***not*** a net gainer.

1    This is not the same as determining whether a party lost or earned money trading in a
2    particular stock.  As alleged in the complaint, Defendants' fraud artificially inflated
     Intuitive's stock price during the Class Period.  Thus, when Marcus purchased
     Intuitive stock prior to the Class Period, he purchased it at fair market value.  When
3    he sold it during the Class Period, however, he sold it at fraudulently inflated prices.
     As a result, instead of being injured by the fraud on these sales, Marcus actually
4    benefitted from the fraud.

5    *Id.*

6         In looking at the transactions that took place in Account 2, clearly more money was received

7    during the Class Period from selling shares than was spent purchasing shares.  Consequently,

8    Account 2's status as a net seller and net gainer "weighs against [its] appointment as the lead

9    plaintiff."  *Id.*; *see also Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005)

10   (excising two members of a movant group and excluding their losses, after finding that "[c]ourts

11   usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have

12   less trouble proving damages").

13        It is no answer for HERS to claim that, ***when aggregated across accounts***, HERS is not a net

14   gainer or a net seller because it is well established that "the purpose of grouping Lead Plaintiffs is

15   not to balance out each other's deficiencies."  *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 457

16   (S.D. Tex. 2002); *Surebeam*, 2004 WL 5159061, at *7 (approvingly citing *In re Critical Path, Inc.*

17   *Sec. Litig.*, 156 F. Supp. 2d 1102 (N.D. Cal. 2001) for the proposition that "***each individual or***

18   ***entity, once segmented, must independently establish adequacy and typicality***").  HERS must

19   decide if it is a single unitary movant (as it always been over the last decade in its eight other lead

20   plaintiff motions) ***or*** if for some reason, HERS is no longer a single unitary movant, each of its

21   accounts must independently meet Rule 23's requirements to be eligible for inclusion in HERS'

22   motion.

23        Under either alternative, NPF emerges as the movant before the Court with the largest

24   financial interest measured by LIFO in the relief sought by the class.

25        **C.    NPF Also Satisfies the Rule 23 Requirements**

26        Because NPF possesses the greatest financial interest, the next question is whether it

27   "otherwise satisfies the requirements of Rule 23."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  At this

28   stage, the Rule 23 determination is limited to typicality and adequacy.  *Cavanaugh*, 306 F.3d at 730.

1    There is no question that NPF is both a typical and adequate member of the putative class

2    here.  *See* ECF No. 38 at 5-7.  As an institutional investor with a substantial financial incentive to

3    diligently direct the litigation and substantial prior experience serving as a lead plaintiff, NPF is the

4    paradigmatic candidate Congress contemplated when it enacted the PSLRA.  *See In re Network*

5    *Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) (recognizing that "Congress

6    expected that the lead plaintiff would normally be an institutional investor with a large stake in the

7    outcome" that "would then monitor, manage and control the litigation, making, as is the case in

8    ordinary cases, litigation decisions on resource allocation and settlement, with, of course, the advice

9    of, but not the prerogative of, class counsel"); *HsingChing Hsu v. Puma Biotechnology, Inc.*, No.

10   8:15-cv-00865-AG-JCG (C.D. Cal.) (NPF, as lead plaintiff, obtaining a rare jury verdict in favor of

11   the shareholder class finding that defendants Puma Biotechnology, Inc. and its CEO committed

12   securities fraud).

13   Thus, by satisfying each of the PSLRA requirements, NPF is entitled to the presumption that

14   it is the most adequate plaintiff.

15       **D.    The Presumption in Favor of Appointing NPF as Lead Plaintiff Will
              Not Be Rebutted**

16

17   To rebut the presumption in favor of NPF's appointment as lead plaintiff, the PSLRA

18   requires the other movants to submit "proof" that NPF "will not fairly and adequately protect the

19   interests of the class," or "is subject to unique defenses." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  None

     exists.  Because none of the competing movants can rebut the presumption that NPF is the most

20   adequate plaintiff, the other motions should be denied.

21

22       **E.    The Competing Motions Should Be Denied Because None of the Other
              Movants Have the Largest Financial Interest**

23   The other movants all claim smaller losses than NPF.  *See* ECF Nos. 29-3,36-3.  Thus,

24   pursuant to the PSLRA's sequential process, the Court may only consider their motions "if and only

25   if [NPF] is found inadequate or atypical."  *Cavanaugh*, 306 F.3d at 732.  Because NPF is "both

26   willing to serve and satisfies the requirements of Rule 23," however, the other motions should be

27   denied.  *Id.* at 730.

28

## IV.     CONCLUSION

NPF possesses the largest financial interest in the relief sought by the class under either the traditional application of the LIFO methodology or HERS' proposed self-disaggregation account-by-account variation thereof, which would require excision of its largest-loss-claiming account. Moreover, HERS cannot trigger the PSLRA's most adequate plaintiff presumption because its ability to represent the class on an "account-by-account" basis is further belied by certain accounts' disqualifying status as "net gainers" and "net sellers." All of the other movants have substantially smaller losses than NPF and none can trigger the PSLRA's most adequate plaintiff presumption. Consequently, their motions should be denied. By contrast, NPF not only suffered the greatest loss, it satisfies the Rule 23 requirements, and is not subject to any unique defenses. NPF's motion should be granted.

DATED: January 12, 2021                         Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
MARK SOLOMON
DANIELLE S. MYERS
MICHAEL ALBERT


                                                         s/ Danielle S. Myers
                                                   DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
marks@rgrdlaw.com
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Counsel for the Norfolk County Council as
Administrating Authority of the Norfolk Pension
Fund

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on January 12, 2021, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I

5

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

6

non-CM/ECF participants indicated on the attached Manual Notice List.

7

             s/ Danielle S. Myers
             DANIELLE S. MYERS

8

9

             ROBBINS GELLER RUDMAN
                & DOWD LLP

10

             655 West Broadway, Suite 1900
             San Diego, CA  92101-8498
             Telephone:  619/231-1058

11

             619/231-7423 (fax)

12

             E-mail:  danim@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4828-8876-1814.v1

# Mailing Information for a Case 3:20-cv-07674-WHA Mullen v. Wells Fargo & Company et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com

- **Michael Albert**
  malbert@rgrdlaw.com,MAlbert@ecf.courtdrive.com

- **Nanci L. Clarence**
  nclarence@clarencedyer.com,achin@clarencedyer.com,ahunt@clarencedyer.com

- **Brian Edward Cochran**
  bcochran@rgrdlaw.com,kwoods@rgrdlaw.com

- **Josh Alan Cohen**
  jcohen@clarencedyer.com,achin@clarencedyer.com,ahunt@clarencedyer.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,tcrockett@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomla

- **Adam F. Shearer**
  ashearer@clarencedyer.com,achin@clarencedyer.com,ahunt@clarencedyer.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Jayant W. Tambe**
  jtambe@jonesday.com

- **John C. Tang**
  jctang@jonesday.com,mdavis@jonesday.com,californiadockets@jonesday.com

- **Robert Moss Tiefenbrun**
  rtiefenbrun@jonesday.com,ecfirvinenotifications@jonesday.com,dhansen@jonesday.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,cbarrett@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)