POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Hawaii*
*Employees' Retirement System*
*and Proposed Lead Counsel for the Class*

(*additional counsel on signature page*)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN A. MULLEN, Individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>                    v.<br><br>WELLS FARGO & COMPANY, C. ALLEN PARKER, TIMOTHY J. SLOAN and JOHN R. SHREWSBERRY,<br><br>                                    Defendants. | Case No.: 3:20-cv-07674-WHA<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br><u>CLASS ACTION</u><br><br>Date:  February 4, 2021<br>Time:  8:00 a.m.<br>Judge:  Hon. William Alsup<br>Courtroom:  12 – 19th Floor |
| JASON WOOD, Individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>                    v.<br><br>WELLS FARGO & COMPANY, C. ALLEN PARKER, TIMOTHY J. SLOAN and JOHN R. SHREWSBERRY,<br><br>                                    Defendants. | Case No.: 3:20-cv-07997-WHA<br><br><br><br><br><br><u>CLASS ACTION</u> |

# TABLE OF CONTENTS

i

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     ARGUMENT ............................................................................................................4

        A.    The Retirement System Has the Largest Financial Interest in this Litigation .......4

              1.    The Retirement System's Losses are Correctly Calculated ......................4

              2.    Under Norfolk's Methodology, the Retirement System Still has the
                    Largest Loss on a FIFO Basis ...................................................................9

              3.    The Other Lax-Olsten Factors Favor the Retirement System ..................11

        B.    The Fact that Certain of the Retirement System's Accounts Were Net Sellers of
              Wells Fargo Stock Provides No Basis to Exclude the Losses Incurred in These
              Accounts .........................................................................................................12

        C.    The Retirement System is Capable of Representing All Class Members and
              Appointment of Roley as a Co-Lead Plaintiff is Unnecessary ...........................15

III.    CONCLUSION.........................................................................................................16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...................................................................................... 11

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................. 5

*Frank v. Dana Corp.*,
   237 F.R.D. 171 (N.D. Ohio) .................................................................................................... 13

*Hodges v. Immersion Corp.*, No. C-09-4073 MMC,
   2009 U.S. Dist. LEXIS 122565 (N.D. Cal. Dec. 21, 2009) .................................................... 13

*In re AudioEye, Inc.*, No. CV-15-163-TUC-DCB,
   2015 U.S. Dist. LEXIS 193348 (D. Ariz. July 31, 2015) ........................................................ 15

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................................... 9

*In re Critical Path*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) .................................................................................... 11

*In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-LRL,
   2010 U.S. Dist. LEXIS 120061 (D. Nev. Oct. 25, 2010) ....................................................... 13

*In re Network Assocs. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ......................................................................... 2, 3, 11, 14

*In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR),
   2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003) ................................................. 12, 13

*In re Veeco Instruments, Inc., Sec. Litig.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) ............................................................................................... 9

*Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB,
   2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ..................................................... 3, 14

*Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK,
   2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) ....................................................... 14

*Pio v. General Motors Co.*, No. Civ. 14-11191,
   2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ............................................... 2, 11

*Richardson v. TVIA, Inc.*, No. C-06-06304,
2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ..................................................... 13

*Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST,
2016 U.S. Dist. LEXIS 177714 (N.D. Cal. Dec. 22, 2016) ............................................... 3, 15

### **Statutes**

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ....................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .................................................................................................... 1

PSLRA ..................................................................................................................................*passim*

### **Rules**

Fed. R. Civ. P. 23 ....................................................................................................... 1, 2, 3, 12

Lead Plaintiff Movant the Retirement System[1] respectfully submits this reply memorandum of points and authorities in further support of its motion and in opposition to the competing motions.

## I.    PRELIMINARY STATEMENT

The Retirement System is the presumptive Lead Plaintiff in this litigation because it is the only movant that satisfies both of the relevant statutory criteria. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). First, it possesses the "largest financial interest," having incurred a loss of roughly $8.71 million on a FIFO basis and $8.66 million on a LIFO basis in connection with its Class Period purchases of Wells Fargo securities. *See* Dkt. No. 47-3. Second, the Retirement System has made the requisite *prima facie* showings of adequacy and typicality within the meaning of Rule 23. *See* Dkt. No. 47 at 10-14. As such, it is entitled to a strong presumption that it is the "most adequate plaintiff" of the Class—*i.e.*, the Lead Plaintiff—a presumption that can be rebutted only upon "proof" that the Retirement System is inadequate, atypical and/or subject to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof has been adduced, and the presumption in the Retirement System's favor remains unrebutted.

Nevertheless, one competing movant, Norfolk, attempts to claim the "largest financial interest" in this litigation itself, by incorrectly claiming that the Retirement System has taken a novel and impermissible approach to its loss calculation—specifically, by first matching purchases to sales on a FIFO or LIFO basis within each of its five accounts at issue, and then by aggregating the gains or losses of all accounts to determine the Retirement System's overall loss. *See* Dkt. No. 53 at 1-2. Yet this approach is hardly novel, as litigants and claims administrators routinely calculate losses on this basis in securities class actions. Moreover, the methodology that Norfolk proposes instead—which involves ignoring the existence of separate accounts, treating all purchases and sales as having occurred within one common, aggregated pool, and performing only ***LIFO*** matching within that aggregated pool—is at odds with the common-sense

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Retirement System's moving and opposition briefs. *See* Dkt. Nos. 47, 52.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-CV-07674-WHA; 3:20-cv-07997-WHA

considerations that underly FIFO and LIFO matching methodologies, as a review of various accounting and tax guidance documents and this Court's own findings in prior actions demonstrates. Indeed, Norfolk's counsel in this litigation, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") has itself utilized the very same methodology for calculating LIFO and FIFO that it now indignantly criticizes as "newly-minted". In any event, calculating losses as Norfolk demands, but on a *FIFO* rather than a LIFO basis, would still give the Retirement System the largest loss in this litigation. Norfolk's insistence on performing this matching only on a LIFO basis—the only basis on which Norfolk can claim the largest financial interest in this litigation—disregards the fact that courts often employ FIFO methodology as well as LIFO at this stage of the litigation, and is likewise at odds with Robbins Geller's endorsement of FIFO calculations in numerous other PSLRA actions. All of this points to the conclusion that Robbins Geller has effectively reverse-engineered Norfolk's claimed loss figure by endorsing only the highly specific methodology it could employ to maximize its losses relative to those of other movants.

In the alternative, if the Court declines to consider loss as the most significant financial interest metric and endorse a specific damages methodology at this stage, then the Retirement System urges the Court to look instead to the other three Lax-Olsten factors—securities purchased, funds expended, and securities retained—all of which are more objective and less manipulable metrics than monetary loss, and all of which favor the appointment of the Retirement System. *See*, *e.g.*, *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1028 (N.D. Cal. 1999) *Pio v. General Motors Co.*, No. Civ. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *4 (E.D. Mich. Oct. 24, 2014).

Surprisingly, after initially insisting that the Court must consider all of the Retirement System's Class Period transactions as though they occurred within a single account, Norfolk then abruptly reverses itself and argues that each of the Retirement System's five accounts must be scrutinized individually for its adequacy and typicality within Rule 23 as though each account were a single individual movant in a movant group. *See* Dkt. No. 53 at 9-11. On this supposed basis, the Retirement System demands that certain of the Retirement Systems' accounts be

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-CV-07674-WHA; 3:20-cv-07997-WHA

excluded from its loss calculation because they are "atypical" net sellers—*i.e.*, having sold more Wells Fargo stock than they purchased during the Class Period—or net gainers. This argument fails for multiple reasons. First, the adequacy and typicality analyses pursuant to the PSLRA and Rule 23 clearly focus on a ***movant***—not the movant's individual accounts. Second, even if this were the appropriate inquiry (and it is not), Norfolk inappropriately conflates net gainers with net sellers—only the former of which are problematic with respect to lead plaintiff appointment. Third, the rationale behind precluding net sellers from serving as class representatives—namely, because they arguably benefited from selling shares at inflated prices during the Class Period— is far less persuasive where, as here, multiple corrective disclosures in fact damaged these shares well before the end of the Class Period, meaning that a net seller is highly unlikely to have benefited, even arguably, from sales of Wells Fargo stock within the Class Period. *See*, *e.g.*, *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876, at \*19-\*20 (N.D. Cal. Mar. 4, 2013); *Network Assocs.*, 76 F. Supp. 2d at 1027.

Finally, one competing movant, Roley, does not oppose the appointment of either the Retirement System or Norfolk, but seeks appointment as a Co-Lead Plaintiff alongside one of the institutions, arguing that a co-leadership structure consisting of both an institution and an individual would help ensure that "a broader range of shareholder interests" are represented. *See* Dkt. No. 50 at 1. Roley, however, cites nothing to suggest that the interests of individual investors would not be adequately represented by the Retirement System serving as sole Lead Plaintiff, and this proposed arrangement flouts the purposes of the PSLRA in encouraging institutional investors with significant financial interests to serve as lead plaintiffs. *See* H.R. Conf. Rep. No. 104-369, at \*34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733; *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714, at \*7 (N.D. Cal. Dec. 22, 2016).

For the reasons set forth herein, the Retirement System respectfully submits that the Court should grant its motion in its entirety and deny the competing motions.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-CV-07674-WHA; 3:20-cv-07997-WHA

## II.    ARGUMENT

### A.    The Retirement System Has the Largest Financial Interest in this Litigation

#### 1.    The Retirement System's Losses are Correctly Calculated

The Retirement System incurred a loss of roughly $8.71 million on a FIFO basis and $8.66 million on a LIFO basis in connection with its Class Period investments in Wells Fargo securities, significantly loss than the roughly $6.19 million loss (identical on either a FIFO or LIFO basis) incurred by Norfolk, the movant alleging the next-largest loss.  In calculating its Class Period loss, the Retirement System properly performed separate FIFO and LIFO analyses for each of its five accounts at issue, then properly aggregated the losses and gains that these separate accounts incurred to arrive at its alleged loss figures.  *See* Dkt. No. 47-3.  The chart below reflects the losses or gains that the Retirement System incurred in each of its accounts and its aggregate loss in this action:

|  | FIFO Gain (Loss) | LIFO Gain (Loss) |
|---|---|---|
| Account 1 | ($3,403,453) | ($3,403,453) |
| Account 2 | ($5,012,542) | ($4,961,354) |
| Account 3 | ($595,658) | ($595,658) |
| Account 4 | $0 | $0 |
| Account 5 | $297,644 | $297,644 |
| *Retirement System* | **($8,714,009)** | **($8,662,821)** |

Norfolk mischaracterizes the Retirement System's analysis methodology as incorrect and "distortive," erroneously asserting that the Retirement System holds "itself out as a disaggregated entity[.]"  Dkt. No. 53 at 1.  Norfolk goes so far as to suggest that the Retirement System's methodology is "newly-minted" (*id.* at 2), claiming that "no public pension fund movant has ever employed this method in lead plaintiff motions before this Court."  *Id.* at 1.  Instead, Norfolk claims that the Retirement System should ignore the fact that its investments occurred in five separate accounts managed by five different investment managers and effectively treat all of its Class Period Wells Fargo transactions as having occurred in a single account and perform a LIFO matching analysis within that single aggregated pool of transactions.  *Id.* at 3-9.  On that basis,

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS –  3:20-CV-07674-WHA; 3:20-cv-07997-WHA

Norfolk asserts that the Retirement System has in fact incurred a loss of $5.77 million—conveniently, just slightly smaller than Norfolk's claimed loss of $6.2 million. *Id.* at 1-2, 4.

Norfolk is wrong. First, the loss calculation methodology it advocates is at odds with the fundamental principles that underly FIFO and LIFO valuation. Both FIFO and LIFO are "matching" methodologies, in which each sale of a security is matched back to a purchase of the same security in order to determine the economic impact of the sale—*i.e.*, to match a sale to a prior purchase. Under FIFO, the first security purchased (the "first-in") is assumed to be the first security sold (the "first-out"). *See*, *e.g.*, *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 129 (S.D.N.Y. 2011). By contrast, under LIFO, the security most recently purchased (the "last-in") is assumed to be the first security sold. *Id.* In *In re Sipex Corp. Securities Litigation*, No. C 05-00392 (N.D. Cal.), this Court elucidated the distinction:

> The LIFO/FIFO issue arises, among other scenarios, when a trader has an inventory of the shares in question going into the class period and trades during the class period, as here. Suppose one share is owned going into the class period, another share is then bought in reliance on the fraud, one share is then sold midway through the class period and, finally, one share is sold at the end of the class period. Recovery is allowable, of course, only for the share purchased during the class period. But which share was sold when? Under FIFO, the previously-held (non-actionable) share would be the first sold share. The fraud-induced (actionable) share would be the last. Under LIFO, it would be the opposite.

*Id.*, Dkt. No. 30 at *4-*5.[2]

As such, when determining to which purchase a sale should be matched, it is simply nonsensical to match sales to purchases that occurred in ***different*** accounts. This is particularly true for a movant such as the Retirement System, where each of its five accounts were managed by different investment managers. It would be a far leap from common sense to match a sale made by one investment manager to a purchase made by a different investment manager.

---

[2] In *Sipex*, the Court did not have occasion to consider the question of whether FIFO/LIFO matching is properly performed on an account-by-account or aggregated basis.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS –  3:20-CV-07674-WHA; 3:20-cv-07997-WHA

A review of accounting and tax guidance provides important context for understanding the purposes and assumptions underlying FIFO/LIFO matching.  For example, PwC's Inventory Accounting Guide's explanation of LIFO methodologies states, in relevant part:

> **Dollar-value LIFO**
> Under dollar-value LIFO, inventory quantities are measured in terms of "base-year" dollar value rather than on physical units. Inventory is ***divided into "pools"*** of similar items and quantities ***for each pool*** are determined based on the cost of items as of a specific date (the base year).

*See* Reply Declaration of Jeremy A. Lieberman ("Lieberman Reply Decl."), Ex. A.

Two tax guidance publications provide further guidance.  An explanation of "Reporting Requirements – Customer's Adjusted Basis and Character of Gain or Loss in Securities Transactions" published by CCH, a provider of tax information services, states that with respect to "determin[ing] a customer's adjusted [tax] basis in a covered security according to the [FIFO] method . . . [a] broker is not required to consider transactions or events occurring outside ***the*** account" at issue (*see* Lieberman Reply Decl., Ex. B (emphasis added))—such as the sale of a security in a separate account, for example.  Even more significantly, the "Instructions for Form 1099-B" published by the Internal Revenue Service ("IRS") likewise states that "[y]ou are not required to consider other transactions, elections or events occurring outside ***the*** account at issue in determining whether the gain or loss on the sale [of a security] is short-term of long-term."  *See* Lieberman Decl., Ex. C (emphasis added).  As such, the Retirement System is simply following guidance from sources such as the IRS, as well as common sense, in performing its LIFO and FIFO calculations on an account-by-account basis.  It appears that Norfolk is advocating that a "special LIFO" methodology be employed in PSLRA Lead Plaintiff determinations.  No such rule exists.

Baked into both the Court's analysis in *Sipex* and the various guidance documents quoted above are underlying common-sense assumptions that nevertheless merit articulation: that any FIFO/LIFO matching valuation deals only with a ***single*** account's inventory of shares—*i.e.*, a ***single*** pool of the shares—and thus shares purchased and sold only within that given account.

Accordingly, FIFO/LIFO matching disregards events occurring outside the account at issue, such as the purchases or sales of shares in *separate* accounts. It would be at odds with these principles and clearly counterintuitive to comingle shares purchased and sold from different accounts and then match sales to purchases within that common, comingled pool, as Norfolk advocates—especially where different accounts are managed by different investment managers. This would foreseeably yield odd scenarios in which, for example, FIFO or LIFO methodologies would require that a share sold in Account 1 by Investment Manager 1 be matched to a share purchased in Account 2 by Investment Manager 2 for valuation purposes—an outcome at odds with basic common sense.

Second, Norfolk's suggestion that this aggregated FIFO/LIFO valuation methodology is universally embraced is demonstrably wrong. The Declaration of Paul Mulholland, the president of Strategic Claims Services ("SCS"), with thirty years of experience specializing in claims administration for more than three hundred securities class action settlements (Lieberman Reply Decl., Ex. D ¶ 2), attests that, with respect to FIFO and LIFO matching:

> [I]f a claim has multiple underlying Investment Accounts ("Underlying Accounts") . . . SCS will typically process these types of claims by determining whether or not each of the Underlying Accounts are (1) separate and distinct from each other; and (2) have independent investment power to buy or sell securities. If so, SCS will generally match the buys and sales of the security *within* each of the Underlying Accounts and have a *separate* calculation to determine the loss for *each* of the Underlying Accounts.

*Id.* ¶ 3 (emphases added).

Indeed, Norfolk's own counsel, Robbins Geller has itself readily employed the LIFO methodology it now derisively refers to as "distortive". In *In re American Capital Realties Litigation*, 1:14-cv-08659-AKH (S.D.N.Y.), seeking lead plaintiff appointment on behalf of its client TIAA-CREF, Robbins Geller submitted a damages analysis in which it performed separate FIFO/LIFO analyses for eight separate accounts—*i.e.*, matching sales to purchases only within each given account—and then presented TIAA-CREF's total loss figure as the aggregate of each

account's loss figure.  *See* Lieberman Decl., Ex. E.  Robbins Geller conspicuously did ***not*** disregard the existence of eight separate TIAA-CREF accounts, treat all shares as belonging to a common pool, and then conduct a single FIFO/LIFO matching analysis across the entire aggregated pool, as it insists that the Retirement System must do here.

Other institutional investors likewise calculate their losses using the same account-by-account valuation methodology that the Retirement System employs here.  For example, both Ironworkers Locals 40, 361 & 417 Union Security Funds and Iron Workers Local 580 Joint Funds (collectively, the "Ironworkers Funds") consistently calculate their losses accordingly.[3]  *See* Lieberman Decl., Exs. F-M.  In the *Arconic* litigation, the Ironworkers Funds are co-lead plaintiffs, represented by Pomerantz, alongside Janet Sullivan, an individual represented by Robbins Geller.  Tellingly, Robbins Geller has not once taken issue with the Ironworkers Funds' loss calculations in *Arconic*, despite the Ironworkers Funds' use of the same account-by-account methodology to which Robbins Geller now strenuously objects in this litigation.

Finally, Norfolk incorrectly states that in *In re Petrobras Sec. Litig.*, 1:14-cv-09662 (S.D.N.Y.) ("*Petrobras*"), the Retirement System "and its present counsel prohibited single-entity class members such as [the Retirement System] from using the 'self-disaggregation' method in their settlement claims, citing language in the *Petrobras* Notice of Settlement to the effect that "a single proof of claim should be submitted on behalf of one legal entity including all transactions made by that entity . . . no matter how many separate accounts that entity has[.]"  Dkt. No. 53 at 7.  ***Nothing*** in this quoted language is at odds with the Retirement System's loss calculation methodology in this litigation.  The *Petrobras* Notice of Settlement merely instructs class

---

[3] *See*, *e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 4:18-cv-06245 (N.D. Cal.); *City of Hallandale Beach Police Officers v. AnaptysBio, Inc.*, 3:20-cv-00656 (S.D. Cal.); *City of Sunrise Firefighters' Pension Fund v. Citigroup Inc.*, 1:20-cv-09132 (S.D.N.Y.); *Cambridge Retirement System v. EQT Corporation*, 2:19-cv-00754 (W.D. Pa.); *Mathes v. Molson Coors Brewing Co.*, 1:19-cv-1162 (N.D. Ill.); *Rhode Island Laborers' Pension Fund v. FedEx Corporation*, 1:19-cv-05990 (S.D.N.Y.); *Gross v. AT&T Inc.*, 1:19-cv-02892 (S.D.N.Y.); *Howard v. Arconic Inc.*, 2:17-cv-01057 (W.D. Pa.) ("*Arconic*").

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS –  3:20-CV-07674-WHA; 3:20-cv-07997-WHA

members not to submit a separate proof of claim for each of their accounts—it does *not* instruct class members to aggregate all of their transactions from separate accounts into one pool, and it certainly does *not* prohibit class members from submitting a single proof of claim reflecting the fact that Class Period transactions occurred in different accounts.

Moreover, contrary to Norfolk's assertions, the Retirement System's calculation of LIFO and FIFO damages on an account-by-account basis is actually the most conservative methodology. As noted above at p. 4, under the LIFO methodology, the Retirement System had *zero* losses for Account 4 and a *gain* of $297,644 for Account 5. *See* Dkt. No. 47-3. By accounting for these accounts' transactions separately, the Retirement System ensures that it did not claim losses that could have otherwise been claimed that these transactions been matched across accounts. Indeed, as Norfolk has pointed out, such separate accounting in fact lowers the Retirement System's alleged FIFO losses.

### 2.   Under Norfolk's Methodology, the Retirement System Still has the Largest Loss on a FIFO Basis

In addition to insisting that its counterintuitive account-aggregated matching is the only permissible loss-calculation methodology, Norfolk even more narrowly insists that this matching can only be performed on a LIFO, rather than a FIFO, basis. *See* Dkt. No. 53 at 4-6. However, contrary to Norfolk's position, courts frequently assess losses on a FIFO basis at the lead plaintiff appointment stage in PSLRA actions. *See*, *e.g.*, *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010) (FIFO and LIFO are "both frequently employed methodologies for the purposes of loss calculation in this context."); *In re Veeco Instruments, Inc., Sec. Litig.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (endorsing FIFO as an "appropriate methodology to apply in matching purchases and sales for the purpose of considering the financial stake of a movant for lead plaintiff status.").

Indeed, Norfolk's counsel, Robbins Geller, has consistently urged courts to use FIFO rather than LIFO methodology in other PSLRA cases. *See*, *e.g.*, *City of Austin Police Retirement System v. Kinross Gold Corporation*, 1:12-cv-01203 (S.D.N.Y), Dkt. No. 27 at 3-10 (endorsing

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS –  3:20-CV-07674-WHA; 3:20-cv-07997-WHA

FIFO as "a widely accepted calculation employed at all stages of securities fraud litigation . . . used by district courts across the country", asserting that "LIFO dramatically underestimates losses."); *Bristol County Retirement System v. Allscripts Healthcare Solutions, Inc.*, 1:12-cv-03297 (N.D. Ill.), Dkt. No. 35 at 4-6 ("FIFO is an entirely proper method of accounting for losses at this preliminary stage" and "LIFO will likely become obsolete . . . in the near future."); *Chun v. Fluor Corporation*, 3:18-cv-01338 (N.D. Tex.), Dkt. No. 23 at 1-2, 8-12 (endorsing FIFO calculation as "accurately represent[ing] [movant's] financial interest in the relief sought by the putative class"); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, 2:13-cv-06731 (E.D. Pa.), Dkt. No. 12 at 1-2, 5 (endorsing FIFO as "an appropriate methodology to calculate financial losses at the lead plaintiff stage").

Here, using Norfolk's account-aggregated matching methodology but on a *FIFO* basis, the Retirement System would have a loss of approximately $13,861,794, significantly larger than Norfolk's claimed FIFO loss of $6,189,911. In other words, Norfolk's insisted-upon methodology conveniently happens to be literally the *only* methodology that would permit Norfolk to claim a larger loss than the Retirement System. Considered together with the fact that Robbins Geller's myopic focus on LIFO in this action contrasts sharply with its embrace of FIFO in other actions, it is clear that Norfolk's claimed loss in this Action was effectively reverse-engineered by its counsel. The fact that Norfolk's claimed loss is identically calculated on either a FIFO or LIFO basis further suggests that embrace of LIFO in this litigation is purely an effort to minimize the loss of the Retirement System, as it has no bearing whatsoever on Norfolk's own loss.

As such, to the extent there is any uncertainty regarding the proper method for applying LIFO in this matter (and there should not be), it would then be appropriate for the Court to utilize FIFO where all movants agree that the Retirement System has the larger loss, even utilizing Norfolk's spurious aggregate methodology.

### 3.     The Other Lax-Olsten Factors Favor the Retirement System

In the alternative, to the extent there is any serious dispute regarding the calculation of the movants' losses, the Court should then consider the other three Lax-Olsten factors—securities purchased, funds expended, and securities retained at the end of the Class Period—all of which favor the Retirement System.  While courts generally consider monetary loss to be the dispositive factor, courts frequently do look to the other Lax-Olsten factors as well, particularly where some difficulty exists—either due to the specific facts of the case or confusion introduced by competing litigants—in determining the appropriate measure of loss.  *See*, *e.g.*, *Network Assocs.*, 76 F. Supp. 2d at 1028 (assessing financial interest with reference to net shares purchased where movants' submissions were "confusing and laced with errors and unspoken assumptions"); *Pio v. General Motors Co.*, No. Civ. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *4 (E.D. Mich. Oct. 24, 2014) (same); *In re Critical Path*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("The Court considers [net shares purchased] the most straightforward method for approximation of financial interest").

*Pio* is particularly instructive.  There, at the lead plaintiff appointment stage, the court faced competing lead plaintiff movants each claiming to have incurred the largest loss, "presenting a dizzying array of damages calculations in their brief and declarations" (*id.* at *18 (quoting *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999)). Ultimately, the court "decline[d] the invitation to ignore all but the fourth *Lax* factor [*i.e.*, loss] in deciding which movant has the largest financial interest in this litigation" and found that "the first three factors provide the most objective measurement of a movant's stake in the litigation because [loss] is heavily dependent on the method applied and numbers chosen to calculate losses."  *Id.* at *11.

Here, the Retirement System respectfully submits that losses are appropriately calculated, without difficulty, per the methodology discussed *supra* at p. 4—*i.e.*, by performing FIFO or LIFO calculations within each of the movant's accounts, and then aggregating the accounts'

respective losses or gains to arrive at the movant's loss—but to the extent that the Court may be disinclined to endorse any particular damages methodology at this stage, the Retirement System respectfully urges the Court to consider instead the other three Lax-Olsten factors as objective, non-variable measures of financial interest.

| Movant | Shares Purchased | Funds Expended | Shares Retained |
|---|---|---|---|
| Retirement System | 1,916,506 | $65,349,876 | 724,481 |
| Norfolk | 383,157 | $18,154,668 | 277,211 |
| Roley | 61,638 | $2,510,009 | 61,368 |

As the table illustrates, the Retirement System purchased more securities, expended more funds on its purchases and retained more securities at the end of the Class Period than did any competing movant. Accordingly, even if the Court were to disregard the competing movants' monetary losses and consider only the other Lax-Olsten factors, the Retirement System would still possess the largest financial interest in this litigation by a significant margin.

**B.    The Fact that Certain of the Retirement System's Accounts Were Net Sellers of Wells Fargo Stock Provides No Basis to Exclude the Losses Incurred in These Accounts**

Norfolk argues that certain of the Retirement System's losses must be excluded from its financial interest because they were incurred in accounts that were net sellers of Wells Fargo stock during the Class Period. *See* Dkt. No. 53 at 9. Again, Norfolk is wrong. First, the typicality inquiry of Rule 23 focuses on the ***movant***—here, the Retirement System—and does not assess the typicality of each of the movant's accounts as though each account were somehow an individual movant, as Norfolk urges the Court to do here. Norfolk has cited no authority to support the proposition that each ***account*** of a movant is analyzed for Rule 23 purposes as opposed to the movant itself. The only case it cites in ostensible support of its position is *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003), in which the court found that when a ***group*** of movants jointly seeks appointment as co-lead plaintiffs, a court must assess the adequacy and typicality of each ***group member***

individually—an entirely different proposition. *Id.* at \*22-\*23. The *Surebeam* court did ***not*** "segment" an individual movant by treating each of the movant's accounts as a separate movant and assessing the typicality of each. Obviously the Retirement System is a single movant seeking appointment as the sole lead plaintiff in this litigation. It is ***not*** a group consisting of five movants seeking to be appointed as co-lead plaintiffs, as Norfolk disingenuously suggests.

Here, while two of the Retirement System's five accounts were net sellers, the Retirement System was, in the aggregate, ***not*** a net seller of Wells Fargo securities, having purchased 38,458 more shares of Wells Fargo stock than it sold across all five of its accounts. *See* Dkt. No. 47-3. And while it baselessly contests the magnitude of the Retirement System's losses, even Norfolk concedes that the Retirement System incurred millions of dollars in losses in connection with its Wells Fargo investments during the Class Period, meaning that the Retirement System is clearly ***not*** a net gainer with respect to its investments.

Second, even with respect to its erroneous analysis of the Retirement System's individual accounts, Norfolk incorrectly conflates net sellers—investors who sold more shares than they purchased during the Class Period—with net gainers—investors who gained rather than lost money on their Class Period investments. The distinction is significant: While a net gainer clearly cannot serve as a Lead Plaintiff in a securities class action because that investor definitionally will not have incurred a loss, net sellers, in many instances, will still have incurred losses in connection with their Class Period investments, and courts regularly appoint such investors as lead plaintiffs. *See*, *e.g.*, *In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-LRL, 2010 U.S. Dist. LEXIS 120061, at \*11-\*12 (D. Nev. Oct. 25, 2010) (rejecting argument "confus[ing] net sellers with net gainers. Whereas a net gainer achieves a net profit from its Class Period shares, a net seller merely sells more shares than it purchased during the Class Period and may well still suffer a loss.") (citing *Richardson v. TVIA, Inc.*, No. C-06-06304, 2007 U.S. Dist. LEXIS 28406, at \*12-\*13 (N.D. Cal. Apr. 16, 2007)); *Hodges v. Immersion Corp.*, No. C-09-4073 MMC, 2009 U.S. Dist. LEXIS 122565, at \*9-\*11 (N.D. Cal. Dec. 21, 2009) (same); *Frank v. Dana Corp.*,

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-CV-07674-WHA; 3:20-cv-07997-WHA

237 F.R.D. 171, 173 (N.D. Ohio) ("[T]hough the [movant] may have been a net seller, it should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff."). Here, even assuming *arguendo* that Norfolk were correct to focus its inquiry on each of the Retirement System's accounts as though it were an individual movant rather than the Retirement System as a whole (and, again, Norfolk is wrong in this regard), its argument that Account 2 would be atypical or that its holdings cannot be considered in assessing the Retirement System's financial interest is incorrect, because Account 2 is merely a net *seller*, and *not* a net *gainer*—having incurred a loss of nearly $5 million, as Norfolk concedes.

Finally, in cases where, as here, multiple corrective disclosures are alleged, the logic for precluding net sellers from serving as lead plaintiffs is in any event less persuasive. The premise of the conclusion that "a net seller arguably profits more from the fraud than suffers from it" (*Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *26-*30 (N.D. Cal. Feb. 15, 2011)) is that by selling shares during the class period—*i.e.*, during the period of time when the shares are alleged to have been trading at inflated prices—a net seller can be said to have benefited from the fraud by selling those shares at prices artificially inflated by the fraud. This assumes a constant fraud premium—*i.e.*, that the company's share price was inflated by the same amount throughout the Class Period, and thus that all shares were correspondingly damaged to the same extent when the truth emerged in a single disclosure. In cases where the fraud is revealed by a series of corrective disclosures, rather than by a single disclosure, that argument fails, because even if an investor does end up selling more shares than it purchased during those Class Period, there is no constant fraud premium, because shares retained throughout multiple corrective disclosures that preceded the end of the Class Period would have been damaged by those disclosures, and thus the investor holding those damaged shares cannot be said to have benefited from the fraud. *See*, *e.g.*, *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *19-*20 (collecting cases and concluding that "a retained shares' calculation [is a ] less useful analytical [tool] where gradual disclosures are involved"); *Network Assocs.*, 76 F. Supp.

2d at 1027 ("this [net shares] approach gets into trouble . . . if the amount of the 'fraud premium' varied over the course of the class period"). Here, the Complaints in the Related Actions allege a total of *five* corrective disclosures, spanning a period of eight months—representing a significant portion of the three-year Class Period. *See* Dkt. No. 1 ¶¶ 72-86; *Wood v. Wells Fargo & Company et al.*, 3:20-cv-07997 (N.D. Cal.), Dkt. No. 1 ¶¶ 4-14, 85-99. Thus, irrespective of the other fatal flaws in Norfolk's argument, this is clearly not a case where net sellers would have benefited from the alleged fraud. The Retirement System's Account 2, which Norfolk attempts to disqualify for being a net seller, held shares during—*i.e.*, held shares that were damaged by— four of the five corrective disclosures alleged, and thus clearly did *not* benefit from the alleged fraud, as Norfolk suggests. As such, the entirety of Norfolk's net seller argument is simply inapplicable to the Retirement System.

### C.    The Retirement System is Capable of Representing All Class Members and Appointment of Roley as a Co-Lead Plaintiff is Unnecessary

Finally, one competing movant, Roley, although not opposing the Retirement System's appointment, seeks to be appointed as a co-lead plaintiff alongside either the Retirement System or Norfolk, arguing that Roley's service in a leadership role alongside an institutional investor would ensure that the interests of "a broader range of shareholder interests" are represented. *See* Dkt. No. 50 at 1. Yet Roley has identified no specific facts—either about this litigation generally or about the Retirement System specifically—to indicate that the Retirement System alone would not adequately represent the interests of individual investors in this litigation. Designating an individual investor as a Lead Plaintiff in this litigation would undermine one of Congress's goals in enacting the PSLRA and including the "largest financial interest" criterion—namely, to encourage institutional investors, rather than individuals, "to assume a more prominent role in securities litigation". *In re AudioEye, Inc.*, No. CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348, at *13 (D. Ariz. July 31, 2015). *See also* H.R. Conf. Rep. No. 104-369, at *34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733; *Shenwick*, 2016 U.S. Dist. LEXIS 177714, at *7.

## III.    CONCLUSION

For the foregoing reasons and for the reasons set forth in its moving and opposition briefs (Dkt. Nos. 47, 52), the Retirement System respectfully requests that the Court grant its motion in full and deny the competing motions.

Dated:  January 19, 2021                    Respectfully submitted,


POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone:  (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice application forthcoming*)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant Hawaii Employees'
Retirement System and Proposed Lead Counsel for the
Class*

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO
COMPETING MOTIONS –  3:20-CV-07674-WHA; 3:20-cv-07997-WHA

## PROOF OF SERVICE

I hereby certify that on January 19, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

REPLY MEMORANDUM OF POINTS AND AUTHORITIES:
(1) IN FURTHER SUPPORT OF MOTION OF HAWAII EMPLOYEES' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS – 3:20-CV-07674-WHA; 3:20-cv-07997-WHA